UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-60975-CIV-ZLOCH

KAILARSH MARAJH,

       Plaintiff,

                                      **OMNIBUS ORDER**

vs.

BROADSPIRE SERVICES, INC.,
REED GROUP, LTD., JOHNSON &
JOHNSON SERVICES, INC., and
JOHNSON & JOHNSON PENSION
COMMITTEE,

       Defendants.
_____/

THIS MATTER is before the Court upon Defendants' Motion For Summary Judgment (DE 30), Defendants' Motion To Treat The Case As Submitted For Disposition (DE 71), Defendants' Motion To Strike (DE 85), Plaintiff Kailarsh Marajh's Motion For Summary Judgment (DE 36), Plaintiff's Motion For Leave To Supplement Plaintiff's Motion For Summary Judgment And Plaintiff's Opposition To Defendants' Motion For Summary Judgment (DE 66), Plaintiff's Motion To Treat The Case As Submitted For Disposition (DE 73), and Plaintiff's Second Motion For Leave To Supplement His Motion For Summary Judgment (DE 84). The Court has carefully reviewed said Motions and the entire court file and is otherwise fully advised in the premises.

Plaintiff Kailarsh Marajh initiated the above-styled cause with the filing of his Complaint on July 11, 2007. Thereafter, he filed a three-count Amended Complaint (DE 20) alleging violations

of the Employee Retirement Income Security Act of 1974
(hereinafter, "ERISA"), 29 U.S.C. §§ 1001 et seq., and a regulation
promulgated thereunder.   The Parties filed cross motions for
summary judgment as to Count I of Plaintiff's Amended Complaint (DE
20), which alleges a wrongful denial of benefits pursuant to §
1132(a)(1)(B).   Defendants' Motion (DE 30) also seeks summary
judgment as to Counts II and III of the Amended Complaint, which
allege violations of 29 C.F.R. § 2560.503-1 and 29 U.S.C. §
1132(c), respectively.

For the reasons expressed more fully below, the Court finds
that genuine issues of material fact surround the allegations in
Counts II and III of the Amended Complaint.   For that reason,
Defendants' instant Motion (DE 30) will be denied.   The Court will
reserve ruling on the instant cross motions (DE Nos. 30 & 36) as to
Count I of the Amended Complaint.

## I. Background

Defendant Johnson & Johnson Services, Inc. (hereinafter
"Johnson & Johnson") maintains a disability insurance plan
available to its employees and those of its affiliated companies.[1]
In September of 1992 Plaintiff was hired by Cordis, an affiliate of
Defendant Johnson & Johnson.   He elected coverage under the Choices

---

[1]   Unless otherwise noted, these facts are taken from
Defendants' Statement Of Undisputed Material Facts (DE 31) and are
supported in the record.   However, for the ease of reference of the
Parties and any reviewing court, citations to the Administrative
Record have been provided.

Disability Plan (hereinafter, "the Plan"), an employee welfare benefit plan governed by ERISA.  29 U.S.C. § 1002(1).  The Plan was set up as a trust, with both administrative costs and benefits payments being drawn out of the fund contributed to by employees enrolled for coverage.   DE 31, Ex. A, AdminR/KM 00648-00649.[2] Broadspire Services, Inc. was retained by Johnson & Johnson to act as Plan Administrator for all relevant times prior to April 1, 2006.  As of April 1, 2006, Johnson & Johnson contracted with Reed Group, Ltd. to assume all duties of Plan Administrator.

The Plan provided disability benefits in the event of an insured becoming totally disabled.   The Plan defined "total disability" and "totally disabled" as follows:

(a)   during the portion of any period of **disability** not exceeding 24 months, plus the duration of the Elimination Period, the complete inability of the Participant, due to Sickness or Injury, to perform the material and substantial duties of the Participant's **regular job**, with or without reasonable accommodation, **AND**

(b)   during the remainder, if any, of the period of disability, the complete inability of the Participant, due to Sickness or Injury, to do **any job** for which the Participant is (or may reasonably become), with or without reasonable accommodation, qualified by training, education, or experience.

---

[2] The administrative record for Plaintiff's claims file is attached as an Exhibit to Docket Entry 31 in the court file.  Based on the method of filing the same via CM/ECF, citations will be made to the Bates stamp numbers found on the lower right corner of the pages: "AdminR/KM [page number]."

Id. at 00628 (emphasis in original).[3]

Plaintiff worked for Cordis without relevant interruption from 1992 until 1999. In the Spring of that year, Plaintiff began experiencing anxiety and depression, which led to angry outbursts at work. He was diagnosed as having major depression, anxiety, panic disorder, and related issues and took a leave of absence from work in October of 1999. During his absence, Plaintiff applied for and received Short Term Disability benefits under the Plan. After he exhausted these, Plaintiff applied for and began receiving Long Term Disability benefits (hereinafter "LTD benefits"). In accord with the Plan, Plaintiff received sixty percent (60%) of his pre-disability salary. He received these benefits, uninterrupted, from April of 2000 until April of 2006.

Pursuant to the Plan, Defendant Broadspire monitored Plaintiff's medical condition. In late 2005, Broadspire received a Behavioral Health Clinician Statement from Plaintiff's treating psychiatrist, Dr. Sohail Punjwani. He reported that despite Plaintiff's history of depression, he was currently emotionally stable and that his reasoning and judgment were within normal limits. Id. at 00157. Dr. Punjwani also reported that as of the date of the Behavioral Health Clinician Statement, December 20,

---

[3] The Plan defined "sickness" as "any disorder of the body or mind of a Participant, excluding Injury", and "injury" as "only accidental bodily injury." AdminR/KM 00628 & 00626. The Plan did not define "disability" or "bodily injury." No Party argues how these terms should be interpreted.

2005, Plaintiff was able to return to work in a low stress environment.

In early February of 2006, Dr. Keiron Brown, a psychologist, conducted an independent evaluation of Plaintiff. Dr. Brown noted that one segment of this evaluation produced invalid results because Plaintiff "still chose to not respond to more than half of the items of the MMPI-2," despite being told that answering them would only help him. Id. at 00161. Dr. Brown noted that this may have been a sign of "malingering" on Plaintiff's part. Id. at 00162. However, despite the incomplete profile, Dr. Brown reported that Plaintiff did not exhibit any cognitive impairment in attention, concentration, or memory function; did not evidence any impairment in reality testing; did not demonstrate any signs of a formal thought disorder; and did not demonstrate clinically significant behavioral impairments. Id. at 00161-00162. Dr. Brown noted that "[a]s there was an absence of any impairments in reality testing or thought processes during the interview and testing sessions, interacting with and testing Mr. Kailarsh was unimpeded and straightforward." Id. at 00162. In his report dated February 9, 2006, Dr. Brown came to the conclusion that there was no functional impairment that would prevent Plaintiff from working an eight-hour sedentary workday in any occupation and that he was able to return to work without any restrictions. Id.

Broadspire notified Plaintiff by a letter dated February 14,

2006, that his LTD benefits would terminate effective April 13, 2006.  The basis for the decision was Broadspire's conclusion that Plaintiff did not meet the definition of "total disability" as defined in the Plan.  Plaintiff was notified of his right to appeal the decision and with his appeal to submit any information that supported his claim that he remained totally disabled. Specifically, Plaintiff was directed to submit

> current medical documentation that includes objective data, such as, but not limited to the following:
>
> Diagnostic test results;
> •   Current mental health status, mental examination, formal psychological testing that support your diagnosis and claim for disability; and which provides specific functional abilities, including any and all restrictions and limitations.
> •   Establishes that you are unable to work in any occupation as defined in [the Plan].

Id. at 00164.  He elected to take his appeal.[4]

On March 13, 2006, Plaintiff's wife requested a copy of his claims file from Defendant Broadspire, which sent the file four days later.  Plaintiff's Statement Of Undisputed Material Facts, DE 37, ¶¶ 15-16.  Plaintiff believed the file lacked a copy of the actual policy and summary plan description, and he then requested a copy from Broadspire on July 20, 2006.  AdminR/KM 00167.  He received a full copy on August 7, 2006.  Id. at 00167-69; id. at 00170 et seq. (Plan).

_____

[4] In the interim, Plaintiff was also notified that Reed Group had been substituted for Broadspire as Plan Administrator. AdminR/KM 00041.

On August 15, 2006, Defendant Reed Group acknowledged Plaintiff's appeal of the initial termination of LTD benefits and informed him that a decision would be made within forty-five (45) days. Id. at 00658. Reed Group also informed Plaintiff that no medical documentation had been enclosed in the appeal as requested by the initial denial letter. Reed Group allowed Plaintiff until August 30, 2006, to provide pertinent medical information in support of his claim for disability. Id. On the same date, in a separate letter, Reed Group informed Plaintiff that it could not release his medical records to Counsel without a release form signed by Plaintiff. Id. at 00657. The executed release form was not submitted to Reed Group until October 18, 2006, and Reed Group sent the relevant records on October 20, 2006. Id. at 00681, 00685.

Plaintiff contacted Dr. Allan Ribbler, a psychologist, to obtain an evaualtion. Dr. Ribbler found Plaintiff to be depressed and suffering from anxiety. He came to the conclusion that Plaintiff was "unable to work at this time." Id. at 00671. Dr. Ribbler also disagreed with Dr. Brown's conclusion that Plaintiff was "malingering" by not answering a portion of the MMPI-2 test. Plaintiff submitted Dr. Ribbler's Psychological Evaluation to Reed Group in early September of 2006.

Dr. Peter Mosbach, a psychologist, reviewed Plaintiff's file and the previous evaluations contained therein. On September 21,

2006, he sent Reed Group his evaluations and conclusions.  Id. at 00673-00677.  Specifically, Dr. Mosbach reviewed the evaluations given by Drs. Punjwani, Brown, and Ribbler, discussed above.  Dr. Mosbach also reviewed an evaluation conducted by Dr. Donald Rose in April of 2000 and another by Dr. Shirly Suarez in February of 2002.  Dr. Mosbach's report concluded that Plaintiff was not totally disabled and has not been so since April 14, 2006.  Dr. Mosbach "found no objective evidence that the claimant's psychological symptoms would prevent him from being able to work in any occupation."  Id. at 00677.  In his rationale, Dr. Mosbach agreed with the conclusions reached by Dr. Brown, who found that Plaintiff was not unable to work, and disagreed with the conclusions reached by Dr. Ribbler, who found that he was unable to work.  Dr. Mosbach recommended that Plaintiff begin a part-time schedule of work for several weeks, in light of his several years of not working, and that he eventually return to work full-time.

Defendant Reed Group notified Plaintiff by a letter dated September 26, 2006, that it would uphold the initial decision to terminate his LTD benefits.  Id. at 00678-00679.  Plaintiff was informed of his right to have this initial appeal reviewed further, which he elected to do.  In the same letter Plaintiff was informed that his second-level appeal must be taken within sixty (60) days from his receipt of the letter.

By letter dated October 19, 2006, Plaintiff wrote to Reed

8

Group arguing, among other things, that he was entitled to 180 days to file his second-level appeal.  Id. at 00683-00684.  The next day, Reed Group reasserted the sixty-day limitation, but informed Plaintiff that if additional medical documentation would be forthcoming, the appeal would be placed in a tolled status until receipt.  Id. at 00686.  Plaintiff filed his second-level appeal by letter dated November 9, 2006.  Id. at 00687-00688.  In this letter Plaintiff stated to Reed Group, "[s]ince you are unwilling to abide by [the] 180-day requirement . . . please consider this Mr. Marajh's second administrative appeal."  Id. at 00688 (emphasis removed).

By letter dated December 22, 2006, Defendant Johnson & Johnson informed Plaintiff that he would in fact have 180 days to file his second-level appeal.  Id. at 00706.  The letter informed Plaintiff of Reed Group's contact information and Johnson & Johnson's contact information, should he have questions, presumably about the inconsistency regarding the length of the appeal window.  Plaintiff did not request additional time to appeal or submit any additional information in support of his appeal.

On January 8, 2007, Johnson & Johnson Pension Committee (hereinafter "the Pension Committee") notified Plaintiff by letter that its final decision on his appeals would be to uphold the initial decision terminating his LTD benefits.  Id. at 00713-00719. This decision was based on the fact that Dr. Brown and Dr.

9

Punjwani, Plaintiff's own treating psychiatrist, plus Dr. Mosbach upon review, found that he was able to work and therefore was not totally disabled.  This letter also noted that Dr. Ribbler found that Plaintiff was unable to work at the time of his evaluation.

Plaintiff's Amended Complaint contains three Counts.  Count I seeks damages and other relief for Defendants' wrongful termination of his LTD benefits.  Counts II and III allege procedural defects by Defendants in their interaction with Plaintiff, including failure to inform him of what information he needed to submit to appeal the initial decision, failure to inform him of the full basis for the decisions made, failure to review all information submitted in the appeals, and failure to provide Plaintiff with a complete copy of his file.

## II. <u>Standard of Review</u>

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); <u>see also</u> <u>Eberhardt v. Waters</u>, 901 F.2d 1578, 1580 (11th Cir. 1990).  The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

10

demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)(quotation omitted).  Indeed,

> the moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment.

Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991); Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

The moving party is entitled to "judgment as a matter of law" when the non-moving party fails to make a sufficient showing of an essential element of the case to which the non-moving party has the burden of proof.  Celotex Corp., 477 U.S. at 322; Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir. 1987).  Further, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### III. Motions For Summary Judgment

Defendants' instant Motion (DE 30) raises three arguments, tracking Counts I-III of the Amended Complaint (DE 20).  First, the decision to terminate Plaintiff's benefits was not wrong, or at the very least it was not arbitrary or capricious; second, there was no violation of 29 C.F.R. § 2560.503-1; third, there was no failure to provide Plan documents.  Plaintiff's instant Motion For Summary

Judgment (DE 36) argues only the first ground, the termination of benefits, and does so to the contrary.[5]

### A. 29 C.F.R. § 2560.503-1

Count II of Plaintiff's Amended Complaint (DE 20) alleges failure on Defendants' part in complying with ERISA's claims procedure set forth by the Department of Labor. 29 C.F.R. § 2560.503-1. Specifically, Plaintiff claims that Defendants failed in the following areas: First, Defendants failed to provide him with copies of all relevant documents used in their decision to terminate his LTD benefits. Second, Defendants failed to provide Plaintiff with copies of the administrative processes and safeguards designed to ensure consistent application of Plan provisions. Third, Defendants failed to give Plaintiff 180 days to file his appeal. And finally, Defendants failed to give specific reasons for crediting Dr. Brown's report with more weight than Dr. Ribbler's report. DE 38, pp. 8-9.[6]

---

[5] Plaintiff's Motion For Summary Judgment (DE 36) does contain argument and allegations that appear to touch on issues addressed by Counts II and III of the Amended Complaint; however, these arguments are drafted in a manner meant to depict Defendants' decision to terminate his LTD benefits as de novo wrong, or at the very least unreasonable. See DE 36, ¶¶ 56, 59, 62, 68, 70, 80, and especially 81; see also DE 52, ¶¶ 8-9 (advancing arguments, including issues relevant to Counts II and III of the Amended Complaint, as to the sole issue of whether the decision terminating Plaintiff's benefits was wrong).

[6] The matters stated above are drawn from Plaintiff's Response (DE 38) to Defendants' Motion For Summary Judgment (DE 30). Subsequent to the filing of the instant cross Motions For Summary Judgment and all Responses and Replies thereto, Plaintiff filed his

Regarding his first argument, that Defendants failed to provide Plaintiff with copies of all relevant documents relied upon in arriving at their decision, the Department of Labor has defined what constitutes a "relevant" document. Defendants were required to provide Plaintiff with all documents "relied upon in making the benefit determination" terminating his benefits and all documents "submitted, considered, or generated in the course of making the benefit determination, without regard to whether [they were] relied upon in making the benefit determination."  29 C.F.R. § 2560.503-1(m)(8), quoted in DE 38, p. 8.  Plaintiff argues that Defendants failed to provide him with the MMPI test given by Dr. Brown and Plaintiff's answers thereto, as well as a guide used by ERISA administrators entitled  The Medical Disability Advisor.

Plaintiff argues that in the information provided to him supporting Defendants' decision to terminate his benefits, they noted that they relied on the opinion and report of Dr. Brown. However, they did not provide the MMPI-2 test that Plaintiff took or his answers to the same.  Plaintiff argues that this underlying information was relevant to the decision.  He is correct.  Clearly

---

Motion To Treat The Case As Submitted For Disposition (DE 73). Therein, he indicated that, subject to any possible supplementary briefing allowed, this action has been fully briefed.  DE 73, ¶ 4. As stated in Part IV of this Order, no further briefing will be permitted.  While Defendants' instant Motion For Summary Judgment (DE 30) does not explicitly address every paragraph listed under Count II of the Amended Complaint, Plaintiff states the action is fully briefed.  Therefore, the Court deems waived the allegations in Count II not addressed by any Party.

the MMPI-2 test and Plaintiff's performance on the same were items "submitted, considered, or generated in the course of making the benefit determination." 29 C.F.R. § 2560.503-1(m)(8). Defendants do not address whether the test and Plaintiff's answers were disclosed. They state only that Dr. Brown's report was given to Plaintiff. DE 46, p. 9. Thus, a question of fact remains whether these items were disclosed. The question is one of material fact because the items were relevant and required to be turned over, 29 C.F.R. § 2560.503-1(m)(8), and because Plaintiff's comments, documents, and records relating to them help create a meaningful dialogue. See Metzger v. UNUM Life Ins. Co. of Am., 476 F.3d 1161, 1168 n.4 (10th Cir. 2007). Therefore, Defendants' Motion shall be denied as to this issue.

With regard to The Medical Disability Advisor, there is no evidence before the Court that supports Plaintiff's claim that the same was relied on but not provided to him. Defendants do not admit that they relied upon it. In Plaintiff's instant Motion For Summary Judgment (DE 36) he notes that "it appears that BROADSPIRE and REED GROUP refer to 'The Medical Disability Advisor: Workplace Guidelines for Disability Duration' when reviewing disability claims." DE 36, ¶ 54.[7] The only support offered for this bald assertion is an unauthenticated and hearsay document printed out

---

[7]    The same assertion, "it appears that . . .," appears in Plaintiff's Response (DE 38) to Defendant's Motion For Summary Judgment. DE 38, ¶ 37 (referencing DE 36, Ex. C).

from a website attached as an Exhibit.  <u>See</u> DE 36, Ex. C.[8]
Plaintiff offers to the Court no guidance as to what the document
attached as Exhibit C is supposed to be.   "When a motion for
summary judgment is properly made and supported, an opposing party
may not rely merely on allegations or denials in its own pleading;
rather, its response must–by affidavits or as otherwise provided in
this rule–set out specific facts showing a genuine issue for
trial." Fed. R. Civ. P. 56(e)(2).  In demonstrating such a genuine
issue for trial, Plaintiff bears the burden to "set out facts that
would be admissible in evidence."  <u>Id.</u> 56(e)(1).  The document at
Exhibit C to Plaintiff's Motion (DE 36) is not admissible in
evidence.   <u>See</u> Fed. R. Evid. 901(a) ("The requirement of
authentication or identification as a condition precedent to
admissibility is satisfied by evidence sufficient to support a
finding that the matter in question is what its proponent
claims.").   Without any supporting affidavit or certification
supporting that the document is what it purports to be (or even
identifying what that might be), the Court cannot consider same.
<u>Id.</u>  Therefore, the Court finds that Plaintiff has failed to
demonstrate any issue of fact related to the issue of whether
Defendants wrongfully failed to provide him with <u>The Medical
Disability Advisor</u>.  Fed. R. Civ. P. 56(e).

───────────────

[8] The document at Exhibit C states that Defendant Broadspire
utilizes the Medical Disability Advisor and that it is provided by
Defendant Reed Group LLC.  <u>See</u> DE 36, Ex. C, pp. 1-2.

Plaintiff next argues that Defendants failed to provide him with copies of the administrative processes and safeguards designed to ensure consistent application of Plan provisions. The Department of Labor claims procedure created by 29 C.F.R. § 2560.503-1 requires that, upon request, an ERISA plan administrator must turn over all relevant documentation. <u>Id.</u> § 2560.503-1(h)(2)(iii). Information and documentation is considered relevant, <u>inter alia</u>, if it "[d]emonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination." <u>Id.</u> § 2560.503-1(m)(8)(iii). Paragraph (b)(5) requires that every ERISA claims procedure contain "administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants." <u>Id.</u> § 2560.503-1(b)(5). It is these safeguards that Plaintiff seeks and these that he alleges were not turned over.

Defendants argue in their instant Motion For Summary Judgment (DE 30) both that they did not violate 29 C.F.R. § 2560.503-1 and that they did not fail to provide plan documents as required by 29 U.S.C. § 1132. DE 30, pp. 11, 15. However, nowhere in this portion of the brief do they address their compliance with Part 2560.503-1(m)(8)(iii). That is, Defendants fail to argue whether

16

the administrative safeguard information was actually provided to
Plaintiff.  In Plaintiff's Response (DE 30), he merely states that
this information "was never provided."  DE 30, ¶ 40.  Defendants do
not address this point in their Reply (DE 46).  Plaintiff raises
this argument in his own Motion For Summary Judgment, DE 36, p. 16,
but Defendants fail to address it in their Response (DE 43).

The Court finds that genuine issues of material fact surround
the issue of whether the administrative safeguard information was
provided to Plaintiff as required by 29 C.F.R. § 2560.503-
1(h)(2)(iii).  Therefore, Defendants' Motion shall be denied as to
this issue.

Plaintiff's next claim is that Defendants failed to give him
180 days to perfect his appeal.  The Department of Labor requires
that all ERISA-governed plans give participants 180 days "following
receipt of a notification of an adverse benefit determination
within which to appeal the determination."  29 C.F.R. § 2560.503-
1(h)(3)(I).  The term "adverse benefit determination" is used
extensively throughout Part 2560.503-1, and it is defined as

> any of the following: a denial, reduction, or termination
> of, or a failure to provide or make payment (in whole or
> in part) for, a benefit, including any such denial,
> reduction, termination, or failure to provide or make
> payment that is based on a determination of a
> participant's or beneficiary's eligibility to participate
> in a plan, and including, with respect to group health
> plans, a denial, reduction, or termination of, or a
> failure to provide or make payment (in whole or in part)
> for, a benefit resulting from the application of any
> utilization review, as well as a failure to cover an item
> or service for which benefits are otherwise provided

because it is determined to be experimental or investigational or not medically necessary or appropriate.

Id. § 2560.503-1(m)(4). What is not included in this definition of adverse benefit determination is <u>the decision to uphold on appeal</u> such a determination. In other words, a decision by Defendants to uphold the initial adverse benefit determination was not itself another adverse benefit determination triggering the 180 day window. <u>Id.</u>; see <u>Glazer</u>, 524 F.3d at 1245 (distinguishing between the "benefit determination" and its review on internal appeal); <u>Price v. Xerox Corp.</u>, 445 F.3d 1054, 1056-57 (8th Cir. 2006) (construing a second level appeal to fall outside the definition of "adverse benefit determination" and its 180-day appeal window requirement).

In general, the ERISA implementing regulations require that the appeals process be fair. In particular, the Department of Labor regulations require that adverse benefits decisions receive a "full and fair review." 29 C.F.R. § 2560.503-1(h)(1). One component of this full and fair review is the requirement that plan participants be given 180 days to appeal an adverse benefits determination. 29 C.F.R. § 2560.503-1(h)(3)(I). The regulations are silent on later appeals and courts have found that as long as a review procedure is in fact "full and fair," a plan administrator need not provide participants with 180 days to file second-level appeals. <u>Price</u>, 445 F.3d at 1056-57.

18

In its initial letter informing Plaintiff of the cancellation of his LTD benefits, dated February 14, 2006, Defendant Broadspire clearly informed Plaintiff that he had 180 days to file his initial appeal of the decision.  AdminR/KM 00163.  After Plaintiff's first appeal and Defendants' upholding of the initial termination of Plaintiff's LTD benefits, Defendant Reed Group informed Plaintiff by letter dated September 26, 2006, that he had sixty (60) days to file his second-level appeal.  Id. at 00679.  By letter dated October 19, 2006, Plaintiff argued that ERISA and its implementing regulations require that he be given 180 days to file his second-level appeal.  Id. at 00684.

The next day, on October 20, 2006, Defendant Reed Group informed Plaintiff that the 180-day period for appeals only applied to the first appeal, not to a second-level appeal.  Id. at 00686. Notwithstanding this time limit for appealing, Defendant Reed Group informed Plaintiff that his second-level appeal would be placed in a tolled status pending the submission of any additional medical documentation he might wish to file.  Id.  Specifically, Defendant stated that "no decision will be rendered until the medical documentation has been submitted on your client's behalf."  Id.  By letter dated November 9, 2006, Plaintiff informed Defendants as follows: "Since you are unwilling to abide by 29 C.F.R. 2560.503-1's 180-day requirement, I am forced to file my appeal at this time.  As such, please consider this correspondence Mr. Marajh's

19

second administrative appeal." Id. at 00688 (emphasis removed).
By letter dated December 22, 2006, Defendant Johnson & Johnson
informed Plaintiff that he would be provided with 180 days to file
his second-level appeal. Id. at 00706. Plaintiff never attempted
to file additional information to support his appeal.

Plaintiff's second-level appeal, that is, the appeal of the
decision upholding the initial termination of his LTD benefits, is
clearly part of the ERISA claims procedure. Such procedure
requires that adverse benefits decisions receive a generally "full
and fair review." 29 C.F.R. § 2560.503-1(h)(1). Plaintiff was
afforded two opportunities to submit additional information for his
appeal. The first was the October 20, 2006, offer to delay the
closing of the appeal window in order to submit additional
documentation. AdminR/KM 00686. The second was the December 22,
2006, notification that Plaintiff would in fact be provided with
180 days to perfect his appeal. Id. at 00706. That Plaintiff
chose not to take advantage of either of these opportunities cannot
be reformulated as a failure on Defendants' part to comply with
ERISA and the regulations promulgated thereunder. The Court finds
that the sixty days he thought he had was sufficient to provide for
a full and fair review of the decision. Price, 445 F.3d at 1057.
Moreover, the extensions offered by Defendants clearly afforded
Plaintiff with a full and fair review of the decision. The Court
finds that by his failure to request a toll in the decision or

20

request to reopen his appeal, Plaintiff waived any right to file his appeal outside of that sixty-day window.

Plaintiff's final argument that Defendants violated 29 C.F.R. § 2560.503-1 was that they failed to give specific reasons for crediting Dr. Keiron Brown's report with more weight than Dr. Allan Ribbler's report.  As stated above, Dr. Brown evaluated Plaintiff and concluded that Plaintiff did not exhibit any cognitive impairment in attention, concentration, or memory function; did not evidence any impairment in reality testing; did not demonstrate any signs of a formal thought disorder; and did not demonstrate clinically significant behavioral impairments.  AdminR/KM 00161-00162.  Dr. Brown concluded that Plaintiff was able to work a sedentary job.  Id. at 00162.  Plaintiff was later evaluated by Dr. Ribber, who concluded that Plaintiff was "unable to work at this time."  Id. at 00671.

In its final notification to Plaintiff that his appeal was denied and the decision to terminate his LTD benefits would be upheld, the Pension Committee summarized the findings of both Dr. Brown and Dr. Ribbler.  Id. at 00718.  Plaintiff challenges the Pension Committee's failure to sufficiently distinguish between the two conflicting reports when arriving its decision.

The Court finds that Defendant Johnson & Johnson did not violate 29 C.F.R. § 2560.503-1 in its final decision by failing to give specific reasons for crediting one report over another.  The

21

opinion and findings of Dr. Ribbler directly contradict those of Dr. Donald L. Rose, Dr. Punjwani, and the Peer Review conducted by a Specialist in Clinical Psychology,[9] all noted in the same letter to Plaintiff. Id. at 00718. The opinion and findings of Dr. Brown accord with these independent evaluators. Thus, Dr. Brown's report clearly falls into the majority of opinions available to the Pension Committee. "[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003) (footnote omitted). Rather, an administrator must simply "provide the claimant 'with a statement of reasons that, under the circumstances of the case, permit a sufficiently clear understanding of the administrator's position to permit effective review.'" Bojorquez v. E.F. Johnson Co., 315 F. Supp. 2d 1368, 1373 (S.D. Fla. 2004) (quoting Counts v. Am. Gen. Life and Acc. Ins. Co., 111 F.3d 105, 108 (11th Cir. 1997)). Therefore, the Court finds that Defendants did not fail to make plain their reasons for crediting the report of Dr. Brown over that of Dr.

---

[9] It appears that this was the review performed by Dr. Mosbach. Compare AdminR/KM 00718 (indicating a review performed on September 21, 2006) with id. at 00673-00677 (report of Dr. Mosbach dated September 21, 2006).

Ribbler.

Upon this record, the Court finds the following with respect to Count II of the Amended Complaint.  First, no genuine issues of material fact remain and Defendants are entitled to judgment as a matter of law as to the following: whether Defendants improperly failed to provide Plaintiff with a copy of <u>The Medical Disability Advisor</u>; whether Defendants failed to provide Plaintiff with 180 days to effect his appeal of the adverse benefit determination; and whether Defendants failed to give specific reasons for crediting Dr. Keiron Brown's report with more weight than Dr. Allan Ribbler's report.  Plaintiff has failed to establish that Defendants violated 29 C.F.R. § 2560.503-1 in these respects, and Defendants' instant Motion (DE 30) will be granted as to these issues.  Second, the Court finds that genuine issues of material fact remain as to the following two issues: (1) whether Defendants provided Plaintiff with a copy of the MMPI-2 test administered by Dr. Brown and Plaintiff's answers to the same, as required by 29 C.F.R. § 2560.503-1(m)(8); and (2) whether Defendants failed to provide Plaintiff with the administrative safeguard information as required by 29 C.F.R. § 2560.503-1(h)(2)(iii), -(m)(8)(iii), & -(b)(5).  Therefore, Defendants' instant Motion (DE 30) will be denied as to these issues.

### C. <u>Provision of Plan Documents</u>

In Count III of his Amended Complaint (DE 20) Plaintiff seeks

relief for Defendants' failure to provide all Plan documents as required by law.  29 U.S.C. § 1132(c).  Plaintiff claims that Defendants failed to provide him with a copy of the policy governing the Plan and a summary plan description within thirty days of his requesting them.

In paragraph 64 of the Amended Complaint, Plaintiff states that by letter dated February 20, 2006, he requested a complete copy of his claims file from Defendant Broadspire.  This letter, though, has not been submitted into the record.  Moreover, in Plaintiff's Statement Of Undisputed Material Facts (DE 37), he does not mention any letter dated February 20, 2006.  See DE 37, ¶¶ 15-16.

Thus, Plaintiff's first request for his file came through his wife, by letter dated March 13, 2006, and sent to Defendant Broadspire.  Id. ¶ 16.  Plaintiff admits that his file was delivered four days later.  Id.  However, Plaintiff argues that this file lacked an actual copy of the Plan policy and a summary plan description.

On July 20, 2006, Plaintiff again requested a copy of his file, which was sent to him on August 7, 2006.  See AdminR/KM 00167-69; id. at 00170 et seq.[10]  Plaintiff argues that he did not

---

[10] In Plaintiff's Response (DE 38) to Defendants' instant Motion For Summary Judgment (DE 30), he does not include any argument at all that Defendants' failure to supply the entire claims file in response to the March 13, 2006, letter is actionable under Count III of the Amended Complaint.  See DE 38, ¶¶ 52-53.

receive summary plan descriptions for the years 1999 and 2000.  DE 38, ¶ 53.   The materials sent to him on August 7, 2006, do constitute summary plan descriptions.  AdminR/KM 00546D.  Count III, then, turns on whether those for 1999 and 2000 were sent.[11]

Defendants argue in their Reply (DE 46) in support of their own instant Motion For Summary Judgment (DE 30) that, prior to 2002, the Plan documents were updated every four years.  Thus, the summary plan description in place in 1998 was that in effect for 1999, 2000, and 2001.  See DE 46, p. 9.  In 2002, it was further updated.  The summary plan descriptions given in the record clearly reflect this periodic updating.  However, there is no evidence before the Court on this issue.  In ruling on a motion for summary judgment "[t]he court may consider any material that would be admissible or usable at trial."  10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2721 (1998).  Defendants have failed to point the Court in the direction of any affidavit establishing this fact of periodic updating of the summary plan descriptions.  Without more, the Court cannot rely simply on the

The Court finds that Plaintiff waived any claim related to the failure to provide Plan documents between the response to the March 13, 2006, letter and the documents provided on August 7, 2006.  See supra note 6.

[11] In Plaintiff's Response (DE 38) to Defendants' instant Motion For Summary Judgment (DE 30), the discussion dealing with Count III is limited to the sole issue of the provision of summary plan descriptions for 1999 and 2000.  Plaintiff does not discuss any other matter.

argument of counsel. <u>Pollock v. Birmingham Trust Nat. Bank</u>, 650
F.2d 807, 811 (5th Cir. July 17, 1981) ("[T]here is simply no
evidence in the record before us that in any way establishes the
relationship of the dealership and the Bank here.  All we have is
the argument of counsel . . ., and we are sure that learned counsel
understand that summary judgment must rest on something more.").[12]
Therefore, Defendants' instant Motion For Summary Judgment (DE 30)
must be denied as to Count III.

### D. Conclusion

Therefore, based on the foregoing analysis, the Court finds
that Plaintiff has failed, as a matter of law, to establish in
Count II that Defendants violated the ERISA claims procedure
created by 29 C.F.R. § 2560.503-1, <u>except</u> that a genuine issue of
material fact remains as to (1) whether Defendants provided
Plaintiff with a copy of the MMPI-2 test administered by Dr. Brown
and Plaintiff's answers to the same, as required by 29 C.F.R. §
2560.503-1(m)(8); and (2) whether Defendants failed to provide
Plaintiff with the administrative safeguard information as required
by 29 C.F.R. § 2560.503-1(h)(2)(iii), -(m)(8)(iii), & -(b)(5).
Moreover, a genuine issue of material fact remains as to Count III
regarding whether Defendants failed to furnish him with all Plan

---

[12] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th
Cir. 1981) (en banc), the Eleventh Circuit adopted as binding
precedent all decisions of the former Fifth Circuit handed down
prior to October 1, 1981.

documents as required by 29 U.S.C. § 1132(c).

With these facts still in dispute, the Court cannot properly conclude whether Defendants' final decision terminating Plaintiff's LTD benefits was wrong or arbitrary.  At trial the Parties shall submit evidence as to whether the documents and information referenced above were provided to Plaintiff.  Assuming, arguendo, that they were not, the Parties will also argue whether Defendants still substantially complied with ERISA and the implementing regulations and what effect this has on the Court's review of the adverse benefit determination under Count I.  These questions must be answered at trial.

IV. Plaintiff's Motions For Leave To Supplement

In Plaintiff's instant Motion For Leave To Supplement Plaintiff's Motion For Summary Judgment (DE 66) and Second Motion For Leave To Supplement His Motion (DE 84), he seeks leave to supplement his own instant summary judgment Motion (DE 36) and his Response (DE 38) to Defendants' with argument based on evidence only recently turned over in discovery.  Plaintiff argues that "via recent discovery, Plaintiff has uncovered additional 'factors' that weigh in favor of" his summary judgment Motion.  DE 66, p. 3; see also DE 84, ¶ 2 (noting Plaintiff's recent reception of discovery that is "pertinent to his Motion For Summary Judgment").  However, the Court notes that these Motions For Leave To Supplement (DE Nos 66 & 84) were filed after the deadline for filing dispositive

motions, set long ago by prior Order (DE 11).  Plaintiff never moved for an extension of time to file his Motion for summary judgment, and he indeed filed his Motion while his discovery requests were pending.  Moreover, he failed to move for an extension of time to respond to Defendants' Motion (DE 30) as would be proper.  Fed. R. Civ. P. 56(f) ("If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present fact essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.").  Plaintiff cannot argue now that his then-pending discovery requests are integral to the successful prosecution of this action.  Therefore, these Motions (DE Nos 66 & 84) shall be denied.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion For Summary Judgment (DE 30) be and the same is hereby **DENIED** in part and the Court reserves ruling in part as follows:

a. To the extent Defendants' Motion For Summary Judgment (DE 30) seeks the entry of summary judgment in their favor as to Counts II and III of the Amended Complaint (DE 20) it be and the same is hereby **DENIED;**

b. In all other respects the Court reserves ruling on

Defendant's Motion For Summary Judgment (DE 30);

2. The Court reserves ruling on Plaintiff Kailarsh Marajh's Motion For Summary Judgment (DE 36);

3. Plaintiff Kailarsh Marajh's Motion For Leave To Supplement Plaintiff's Motion For Summary Judgment And Plaintiff's Opposition To Defendants' Motion For Summary Judgment (DE 66) and Plaintiff Kailarsh Marajh's Second Motion For Leave To Supplement His Motion For Summary Judgment (DE 84) be and the same are hereby **DENIED**;

4. Defendants' Motion To Treat The Case As Submitted For Disposition (DE 71) and Plaintiff Kailarsh Marajh's Motion To Treat The Case As Submitted For Disposition (DE 73) be and the same are hereby **DENIED**; and

5. Defendants' Motion To Strike (DE 85) be and the same is hereby **DENIED** as moot.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this ___21st___ day of November, 2008.

_William J. Z_
WILLIAM J. ZLOCH
United States District Judge

Copies furnished:
All Counsel of Record

29