```
              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF FLORIDA

              CASE NO. 07-60975-CIV-ZLOCH
```

KAILARSH MARAJH,

      Plaintiff,

                                            **O R D E R**

vs.

BROADSPIRE SERVICES, INC.,
REED GROUP, LTD., JOHNSON &
JOHNSON SERVICES, INC., and
JOHNSON & JOHNSON PENSION
COMMITTEE,

      Defendants.
_____/

     THIS MATTER is before the Court upon Defendants' Motion For Summary Judgment (DE 30), and Plaintiff Kailarsh Marajh's Motion For Summary Judgment (DE 36). The Court has carefully reviewed said Motions and the entire court file and is otherwise fully advised in the premises.

     By prior Order (DE 97), the Court granted in part and reserved ruling in part on Defendant's instant Motion For Summary Judgment (DE 30) and reserved ruling on Plaintiff's instant Motion For Summary Judgment (DE 36). Therein, the Court noted that several factual disputes prevented final resolution of this matter at that stage. The Court then invited the Parties to settle the factual disputes, as they were fairly straightforward, and file briefing on how any factual resolution should affect the final outcome of this action. See DE 106. The Parties have stipulated to many of the areas noted by the Court and filed briefing on the remaining legal

and factual issues.  See DE Nos. 107, 109-113, & 115, Ex. A.

Plaintiff Kailarsh Marajh initiated the this action alleging violations of the Employee Retirement Income Security Act of 1974 (hereinafter, "ERISA"), 29 U.S.C. §§ 1001 et seq., and a regulation promulgated thereunder.  For the reasons expressed more fully below, the Court finds that Defendants' decision to terminate Plaintiff's benefits was not arbitrary and capricious.  Therefore, summary judgment will be entered for Defendant as to Count I.  Further, the Court finds that no genuine issues of material fact surround Counts II and III, and, therefore, Defendants are entitled to judgment as a matter of law on the same.

## I. Background

Defendant Johnson & Johnson Services, Inc. (hereinafter "Johnson & Johnson") maintains a disability insurance plan available to its employees and those of its affiliated companies.[1]  In September of 1992 Plaintiff was hired by Cordis, an affiliate of Defendant Johnson & Johnson.  He elected coverage under the Choices Disability Plan (hereinafter, "the Plan"), an employee welfare benefit plan governed by ERISA.  29 U.S.C. § 1002(1).  The Plan was set up as a trust, with both administrative costs and benefits payments being drawn out of the fund contributed to by employees

---

[1] Unless otherwise noted, these facts are taken from Defendants' Statement Of Undisputed Material Facts (DE 31) and are supported in the record.  However, for the ease of reference of the Parties and any reviewing court, citations to the Administrative Record have been provided.

enrolled for coverage.  DE 31, Ex. A, AdminR/KM 00648-00649.[2] Broadspire Services, Inc. was retained by Johnson & Johnson to act as Plan Administrator for all relevant times prior to April 1, 2006.  As of April 1, 2006, Johnson & Johnson contracted with Reed Group, Ltd. to assume all duties of Plan Administrator.

The Plan provided disability benefits in the event of an insured becoming totally disabled.  The Plan defined "total disability" and "totally disabled" as follows:

> (a) during the portion of any period of **disability** not exceeding 24 months, plus the duration of the Elimination Period, the complete inability of the Participant, due to Sickness or Injury, to perform the material and substantial duties of the Participant's **regular job**, with or without reasonable accommodation, **AND**
>
> (b) during the remainder, if any, of the period of disability, the complete inability of the Participant, due to Sickness or Injury, to do **any job** for which the Participant is (or may reasonably become), with or without reasonable accommodation, qualified by training, education, or experience.

Id. at 00628 (emphasis in original).[3]

Plaintiff worked for Cordis without relevant interruption from 1992 until 1999.  In the Spring of that year, Plaintiff began

---

[2] The administrative record for Plaintiff's claims file is attached as an Exhibit to Docket Entry 31 in the court file.  Based on the method of filing the same via CM/ECF, citations will be made to the Bates stamp numbers found on the lower right corner of the pages: "AdminR/KM [page number]."

[3] The Plan defined "sickness" as "any disorder of the body or mind of a Participant, excluding Injury", and "injury" as "only accidental bodily injury."  AdminR/KM 00628 & 00626.  The Plan did not define "disability" or "bodily injury."  No Party argues how these terms should be interpreted.

experiencing anxiety and depression, which led to angry outbursts at work. He was diagnosed as having major depression, anxiety, panic disorder, and related issues and took a leave of absence from work in October of 1999. During his absence, Plaintiff applied for and received Short Term Disability benefits under the Plan. After he exhausted these, Plaintiff applied for and began receiving Long Term Disability benefits (hereinafter "LTD benefits"). In accord with the Plan, Plaintiff received sixty percent (60%) of his pre-disability salary. He received these benefits, uninterrupted, from April of 2000 until April of 2006.

Pursuant to the Plan, Defendant Broadspire monitored Plaintiff's medical condition. In late 2005, Broadspire received a Behavioral Health Clinician Statement from Plaintiff's treating psychiatrist, Dr. Sohail Punjwani. He reported that despite Plaintiff's history of depression, he was currently emotionally stable and that his reasoning and judgment were within normal limits. Id. at 00157. Dr. Punjwani also reported that as of the date of the Behavioral Health Clinician Statement, December 20, 2005, Plaintiff was able to return to work in a low stress environment.

In early February of 2006, Dr. Keiron Brown, a psychologist, conducted an independent evaluation of Plaintiff. Dr. Brown noted that one segment of this evaluation produced invalid results because Plaintiff "still chose to not respond to more than half of the items of the MMPI-2," despite being told that answering them would only help him. Id. at 00161. Dr. Brown noted that this may

have been a sign of "malingering" on Plaintiff's part. Id. at 00162. However, despite the incomplete profile, Dr. Brown reported that Plaintiff did not exhibit any cognitive impairment in attention, concentration, or memory function; did not evidence any impairment in reality testing; did not demonstrate any signs of a formal thought disorder; and did not demonstrate clinically significant behavioral impairments. Id. at 00161-00162. Dr. Brown noted that "[a]s there was an absence of any impairments in reality testing or thought processes during the interview and testing sessions, interacting with and testing Mr. Kailarsh was unimpeded and straightforward." Id. at 00162. In his report dated February 9, 2006, Dr. Brown came to the conclusion that there was no functional impairment that would prevent Plaintiff from working an eight-hour sedentary workday in any occupation and that he was able to return to work without any restrictions. Id.

Broadspire notified Plaintiff by a letter dated February 14, 2006, that his LTD benefits would terminate effective April 13, 2006. The basis for the decision was Broadspire's conclusion that Plaintiff did not meet the definition of "total disability" as defined in the Plan. Plaintiff was notified of his right to appeal the decision and with his appeal to submit any information that supported his claim that he remained totally disabled. Specifically, Plaintiff was directed to submit

> current medical documentation that includes objective data, such as, but not limited to the following:
>
> Diagnostic test results;

5

- Current mental health status, mental examination, formal psychological testing that support your diagnosis and claim for disability; and which provides specific functional abilities, including any and all restrictions and limitations.
- Establishes that you are unable to work in any occupation as defined in [the Plan].

Id. at 00164.  He elected to take his appeal.[4]

On March 13, 2006, Plaintiff's wife requested a copy of his claims file from Defendant Broadspire, which sent the file four days later.  Plaintiff's Statement Of Undisputed Material Facts, DE 37, ¶¶ 15-16.  Plaintiff believed the file lacked a copy of the actual policy and summary plan description, and he then requested a copy from Broadspire on July 20, 2006.  AdminR/KM 00167.  He received a full copy on August 7, 2006.  Id. at 00167-69; id. at 00170 et seq. (Plan).

On August 15, 2006, Defendant Reed Group acknowledged Plaintiff's appeal of the initial termination of LTD benefits and informed him that a decision would be made within forty-five (45) days.  Id. at 00658.  Reed Group also informed Plaintiff that no medical documentation had been enclosed in the appeal as requested by the initial denial letter.  Reed Group allowed Plaintiff until August 30, 2006, to provide pertinent medical information in support of his claim for disability.  Id.  On the same date, in a separate letter, Reed Group informed Plaintiff that it could not release his medical records to Counsel without a release form

---

[4] In the interim, Plaintiff was also notified that Reed Group had been substituted for Broadspire as Plan Administrator.  AdminR/KM 00041.

signed by Plaintiff.  Id. at 00657.  The executed release form was not submitted to Reed Group until October 18, 2006, and Reed Group sent the relevant records on October 20, 2006.  Id. at 00681, 00685.

Plaintiff contacted Dr. Allan Ribbler, a psychologist, to obtain an evaulation.  Dr. Ribbler found Plaintiff to be depressed and suffering from anxiety.  He came to the conclusion that Plaintiff was "unable to work at this time."  Id. at 00671.  Dr. Ribbler also disagreed with Dr. Brown's conclusion that Plaintiff was "malingering" by not answering a portion of the MMPI-2 test. Plaintiff submitted Dr. Ribbler's Psychological Evaluation to Reed Group in early September of 2006.

Dr. Peter Mosbach, a psychologist, reviewed Plaintiff's file and the previous evaluations contained therein.  On September 21, 2006, he sent Reed Group his evaluations and conclusions.  Id. at 00673-00677.  Specifically, Dr. Mosbach reviewed the evaluations given by Drs. Punjwani, Brown, and Ribbler, discussed above.  Dr. Mosbach also reviewed an evaluation conducted by Dr. Donald Rose in April of 2000 and another by Dr. Shirly Suarez in February of 2002. Dr. Mosbach's report concluded that Plaintiff was not totally disabled and has not been so since April 14, 2006.  Dr. Mosbach "found no objective evidence that the claimant's psychological symptoms would prevent him from being able to work in any occupation."  Id. at 00677.  In his rationale, Dr. Mosbach agreed with the conclusions reached by Dr. Brown, who found that Plaintiff was not unable to work, and disagreed with the conclusions reached

7

by Dr. Ribbler, who found that he was unable to work. Dr. Mosbach recommended that Plaintiff begin a part-time schedule of work for several weeks, in light of his several years of not working, and that he eventually return to work full-time.

Defendant Reed Group notified Plaintiff by a letter dated September 26, 2006, that it would uphold the initial decision to terminate his LTD benefits. Id. at 00678-00679. Plaintiff was informed of his right to have this initial appeal reviewed further, which he elected to do. In the same letter Plaintiff was informed that his second-level appeal must be taken within sixty (60) days from his receipt of the letter.

By letter dated October 19, 2006, Plaintiff wrote to Reed Group arguing, among other things, that he was entitled to 180 days to file his second-level appeal. Id. at 00683-00684. The next day, Reed Group reasserted the sixty-day limitation, but informed Plaintiff that if additional medical documentation would be forthcoming, the appeal would be placed in a tolled status until receipt. Id. at 00686. Plaintiff filed his second-level appeal by letter dated November 9, 2006. Id. at 00687-00688. In this letter Plaintiff stated to Reed Group, "[s]ince you are unwilling to abide by [the] 180-day requirement . . . please consider this Mr. Marajh's second administrative appeal." Id. at 00688 (emphasis removed).

By letter dated December 22, 2006, Defendant Johnson & Johnson informed Plaintiff that he would in fact have 180 days to file his second-level appeal. Id. at 00706. The letter informed Plaintiff

of Reed Group's contact information and Johnson & Johnson's contact information, should he have questions, presumably about the inconsistency regarding the length of the appeal window.  Plaintiff did not request additional time to appeal or submit any additional information in support of his appeal.

On January 8, 2007, Johnson & Johnson Pension Committee (hereinafter "the Pension Committee") notified Plaintiff by letter that its final decision on his appeals would be to uphold the initial decision terminating his LTD benefits.  Id. at 00713-00719. This decision was based on the fact that Dr. Brown and Dr. Punjwani, Plaintiff's own treating psychiatrist, plus Dr. Mosbach upon review, found that he was able to work and therefore was not totally disabled.  This letter also noted that Dr. Ribbler found that Plaintiff was unable to work at the time of his evaluation.

Plaintiff's Amended Complaint contains three Counts.  Count I seeks damages and other relief for Defendants' wrongful termination of his LTD benefits.  Counts II and III allege procedural defects by Defendants in their interaction with Plaintiff, including failure to inform him of what information he needed to submit to appeal the initial decision, failure to inform him of the full basis for the decisions made, failure to review all information submitted in the appeals, and failure to provide Plaintiff with a complete copy of his file.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate

9

>     if the pleadings, the discovery and disclosure materials
>     on file, and any affidavits show that there is no genuine
>     issue as to any material fact and that the movant is
>     entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990).  The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)(quotation omitted).  Indeed,

>     the moving party bears the initial burden to show the
>     district court, by reference to materials on file, that
>     there are no genuine issues of material fact that should
>     be decided at trial.  Only when that burden has been met
>     does the burden shift to the non-moving party to
>     demonstrate that there is indeed a material issue of fact
>     that precludes summary judgment.

Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991); Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

The moving party is entitled to "judgment as a matter of law" when the non-moving party fails to make a sufficient showing of an essential element of the case to which the non-moving party has the burden of proof.  Celotex Corp., 477 U.S. at 322; Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir. 1987).  Further, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

With respect to Count I, the central issue in this case is whether Plaintiff's LTD benefits were wrongfully terminated according to the provisions of the Plan.  The Supreme Court has recently reaffirmed the differing standards of review in ERISA benefits denial cases.  Metropolitan Life Ins. Co. v. Glenn, 544 U.S. ___, 128 S. Ct. 2343, 2347-48 (2008), citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 105-15 (1989).  The standard to be applied by a court reviewing the benefits decision differs depending on the discretion afforded to the plan administrator.  If the plan administrator reserved no discretion in its decision making, any decision will be reviewed de novo.  If discretion was reserved, arbitrary and capricious review is employed.  Doyle v. Liberty Life Assur. Co. of Boston, 511 F.3d 1336, 1340 (11th Cir. 2008), citing Williams v. Bellsouth Telecommunications, Inc., 373 F.3d 1132, 1138 (11th Cir. 2004) (further citations omitted).

### III. Analysis

When the Court first addressed the instant Motions for Summary Judgment, several issues of fact prevented judgment from being entered for either side.  By its prior Order, the Court noted that

> a genuine issue of material fact remains as to (1) whether Defendants provided Plaintiff with a copy of the MMPI-2 test administered by Dr. Brown and Plaintiff's answers to the same, as required by 29 C.F.R. § 2560.503-1(m)(8); and (2) whether Defendants failed to provide Plaintiff with the administrative safeguard information as required by 29 C.F.R. § 2560.503- 1(h)(2)(iii), -(m)(8)(iii), & -(b)(5).  Moreover, a genuine issue of material fact remains as to Count III regarding whether Defendants failed to furnish him with all Plan documents as required by 29 U.S.C. § 1132(c).

11

DE 97, pp. 26-27.  After that Order was entered, Plaintiff also raised the issue of whether Defendants were required to turn over to him the <u>Medical Disability Advisor</u>, a manual used at times by Defendant Reed Group.  A recent discovery response indicated its use by Reed Group.  Finally, in said prior Order (DE 97), the Court reserved ruling as to Count I, which seeks review of the termination of Plaintiff's benefits.

### A. <u>Count I</u>

By prior Order (DE 106), the Court ruled that the Plan properly reserved discretion in reviewing claims.  Thus, the Court reviews Defendants' decision to terminate Plaintiff's LTD benefits using arbitrary and capricious review, which is equated with review for abuse of discretion.  <u>Jett v. Blue Cross & Blue Shield of Ala., Inc.</u>, 890 F.2d 1137, 1139 (11th Cir. 1989).  When the standard of review is arbitrary and capricious, the issue of whether a conflict of interest exists for the plan administrator is to be taken as one factor among all others in the Court's analysis.  <u>See</u> <u>Glenn</u>, 544 U.S. ___, 128 S. Ct. at 2350-52 (citing <u>Firestone</u>, 489 U.S. at 115).  A benefits decision will be upheld "[a]s long as a reasonable basis appears for [the] decision . . ., even if there is evidence that would support a contrary decision."  <u>Jett</u>, 890 F.2d at 1140.

Defendants' decision to terminate Plaintiff's benefits was not arbitrary and capricious.  Plaintiff applied for and received first short term disability benefits and, upon exhaustion, long term disability benefits.  After reviewing reports of treating doctors

12

concerning Plaintiff's health status, Defendant Broadspire terminated Plaintiff's benefits; it determined that he was no longer totally disabled. Relevant to the discussion herein, the Plan defines "total disability" and "totally disabled" as follows:

> (b) during the [period of disability 24 months and longer], if any, . . . the complete inability of the Participant, due to Sickness or Injury, to do **any job** for which the Participant is (or may reasonably become), with or without reasonable accommodation, qualified by training, education, or experience.

AdminR/KM 00628 (emphasis in original).

On December 20, 2005, Dr. Punjwani sent a Behavioral Health Clinician Statement to Defendant Broadspire indicating, after an evaluation of Plaintiff, that he was able to work with accommodations in a low stress environment. Id. at 00158. In his Motion For Summary Judgment (DE 36), Plaintiff does not attempt to undermine the reliability of Dr. Punjwani's examination of Plaintiff or his Statement that Plaintiff is able to work. Rather, he seeks only to elucidate its meaning. Plaintiff cites to the Court an affidavit by Dr. Punjwani stating that the recommendation given in the Clinician Statement was not a release to full-time sedentary employment, but rather was stating Dr. Punjwani's approval of Plaintiff's "intermittent part-time employment." DE 32, Ex. A. Thus, Plaintiff himself agrees with Dr. Punjwani's opinion that he was not totally disabled. That is, Plaintiff was not unable "to do any job for which [he] is (or may reasonably become), with or without reasonable accommodation, qualified by

training, education, or experience." AdminR/KM 00628.

Following Dr. Punjwani's Clinician Statement, Dr. Keiron Brown, a psychologist, conducted an independent evaluation of Plaintiff. His conclusions largely mirror those of Dr. Punjwani. Specifically, he found that there was no functional impairment that would prevent Plaintiff from working an eight-hour sedentary workday in any occupation and that he was able to return to work without any restrictions. Id. at 00162.

On the basis of these two independent conclusions from two different doctors, one of whom was Plaintiff's treating physician, and both of whom stated Plaintiff was not prohibited from engaging in some employment, Defendant Broadspire concluded that Plaintiff was not totally disabled. Id. at 00163. The Court finds that the decision to terminate Plaintiff's LTD benefits was not arbitrary and capricious: based upon the facts known to them, Defendants had a reasonable basis for their conclusion that Plaintiff was not totally disabled. Glazer v. Reliance Std. Life Ins. Co., 524 F.3d 1241, 1246 (11th Cir. 2008) (quoting Jett, 890 F.2d at 1139).

Plaintiff appealed this initial decision terminating his LTD benefits. For the review performed by Defendants, Plaintiff obtained and submitted a report by Dr. Allan Ribbler, who opined that Plaintiff was unable to work as of early September 2006. The entire claims file, including Dr. Ribbler's report and the previous reports, was reviewed by Dr. Peter Mosbach, who concluded that Plaintiff was not "totally disabled" as required by the Plan for LTD benefits. This additional evidence adduced during the first-

14

and second-level appeals does nothing to remove the reasonable basis Defendants had supporting their decision to terminate Plaintiff's benefits. Because Defendants were "vested with discretion when reviewing claims," and because their determination was not arbitrary and capricious, judicial inquiry is at an end and the decision will be affirmed. Doyle, 511 F.3d at 1340; Glazer, 524 F.3d at 1246.

### B. Counts II and III

The factual dispute regarding § 1132(c) in Count III that remained at the time the Court first addressed the instant Motions is whether Defendants turned over all relevant summary plan descriptions to Plaintiff as required by ERISA's implementing regulations. See DE 97, pp. 23-25. The Parties have stipulated that all summary plan descriptions for the relevant time were turned over. DE 107, ¶¶ C-E. Thus, this issue is now moot, and Defendants are entitled to judgment as a matter of law as to Count III.

Turning now to Count II, three questions remain: whether Defendants turned over to Plaintiff his incomplete MMPI-2 test answers, the Medical Disability Advisor manual, and evidence of compliance with its administrative safeguards. Plaintiff premises his argument for recovery on these issues on the ERISA claims procedure set forth in 29 C.F.R. § 2560.503-1, which contains a detailed list of requirements for plans governed by ERISA to follow. Congress has stated that ERISA claimants must receive in general a full and fair review. 29 U.S.C. § 1133(2). The

15

Department of Labor has defined, in excruciating detail, what constitutes a full and fair review. 29 C.F.R. § 2560.503-1. Many courts have ruled, however, that this seemingly extensive set of requirements does not mandate exacting compliance. Rather, claims administrators are bound to substantially comply with 29 C.F.R. § 2560.503-1. See Perrino v. S. Bell Tel. & Tel. Co., 209 F.3d 1309, 1318 (11th Cir. 2000) (employer technically noncompliant with procedural requirements but claimant still had fair and reasonable opportunity to pursue claim before filing suit in federal court); Zalka v. Unum Life Ins. Co. of Am., 65 F. Supp. 2d 1369, 1370-71 (S.D. Fla. 1998) (same), aff'd, 170 F.3d 188 (11th Cir. 1999) (table). Thus, ERISA requires that an insured receive a full and fair review by the claims administrator of any adverse benefits decision, and this is met by demonstrating substantial compliance with 29 C.F.R. § 2560.503-1.

The Parties have stipulated that Plaintiff never received a copy of the MMPI-2 test administered to him or his incomplete answers thereto. They dispute, however, whether such non-disclosure is a violation of the ERISA claims procedure. As stated above, the MMPI-2 test was but a fraction of the testing done by Dr. Brown.[5] He noted that "[a]s there was an absence of any

---

[5] The Court also notes that it was Plaintiff who chose not to complete the entire MMPI-2 test despite being told it was in his interest to do so. While Dr. Brown opined that his failure to complete the test may have been a sign of malingering, there is no evidence that the incomplete MMPI-2 test was of any great weight in the finding that Plaintiff was not totally disabled.

16

impairments in reality testing or thought processes during the interview and testing sessions, interacting with and testing Mr. Kailarsh was unimpeded and straightforward." AdminR/KM at 00162. Thus, after numerous interview and testing sessions and on the basis of both testing Plaintiff and interacting with him, and not simply based on the incomplete MMPI-2 profile, Dr. Brown concluded that Plaintiff was able to work a sedentary job. Plaintiff was free to seek review of the adverse benefits determination based partly on Dr. Brown's opinion. The failure to turn over the MMPI-2 test, a failure to comply technically with 29 C.F.R. § 2560.503-1, is not a failure to substantially comply with the same.

After the instant Motions For Summary Judgment were fully briefed, Plaintiff received a discovery response from Reed Group stating that it relies on the <u>Medical Disability Advisor</u> in "any case." DE 100, Ex. A. Thus, he seeks to reargue that Defendants failed in turning the same over to him as relevant evidence in the review of his claim for benefits. Nowhere in the Administrative Record did Defendants state that the adverse benefits determination was based in part on the <u>Medical Disability Advisor</u>; rather, Plaintiff was under the impression that they used this manual in disposing of his claim and hid this information from him. The discovery response stating that Reed Group does use it in evaluating claims is not conclusive on this question. However, this ambiguity is not material because Defendants determined Plaintiff was not prevented from doing any job by his sickness. Thus, he was not totally disabled according to the Plan's

definition. As recited above in Part I of this Order, Plaintiff never submitted any additional information in his second-level appeal to show that he was unable to so work. Thus, any failure by Defendants to turn over the Medical Disability Advisor did not prevent a full and fair review of Plaintiff's benefits claim. The Court finds that they substantially complied with the required process. Perrino, 209 F.3d at 1318.

The final question remaining as to Count II is whether Defendants failed to provide Plaintiff with evidence of compliance with its administrative safeguards as required by 29 C.F.R. § 2560.503-1(h)(2)(iii), -(m)(8)(iii), & -(b)(5). There is little case law interpreting exactly what is meant by "[a] document, record, or other information" that "[d]emonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination." Id. § 2560.503-1(m)(8)(iii). However, the Department of Labor has clarified that paragraph (m)(8)(iii) requires a claims administrator to turn over "any information that the plan has generated or obtained in the process of ensuring and verifying that, in making the particular determination, the plan complied with its own administrative processes and safeguards that ensure and verify appropriately consistent decisionmaking in accordance with the plan's terms." 65 Fed. Reg. 70252 (Nov. 21, 2000) (emphasis added). Thus, a claims administrator's evidence of compliance with administrative safeguards may vary from case to case and there may be cases where documentary evidence is not

18

available to turn over to claimants in each case.  "It is not the Department's intention in this regard to require plans to artificially create new systems for the sole purpose of generating documents that can be handed to a claimant whose claim is denied in order to satisfy this disclosure requirement."  Id. (emphasis added).  Rather, "plans generally will have systems for ensuring and verifying consistent decisionmaking that may or may not result in there being disclosable documents or information pertaining to an individual claims decision."  Id.

Thus, a distinction must be made between administrative safeguards, which every claims administrator is bound to maintain pursuant to 29 C.F.R. § 2560.503-1(b)(5), and evidence of compliance with those safeguards.  There is no requirement in the ERISA claims procedure that the latter even be maintained; however, if it exists, it must be turned over pursuant to 29 C.F.R. § 2560.503-1(m)(8)(iii).  See 65 Fed. Reg. 70252.  The Court finds that Defendants satisfied their obligation to give Plaintiff evidence of compliance with the administrative safeguards in the final determination letter dated January 8, 2007. AdminR/KM 00713-00719.  In the alternative, the Court finds no violation of 29 C.F.R. § 2560.503-1(m)(8)(iii) because Defendants were under no obligation to create any new documentation that demonstrated their compliance with the required administrative safeguards.  65 Fed. Reg. 70252; see also Brooks v. Metropolitan Life Ins. Co., 526 F. Supp. 2d 534 (D. Md. 2007); Palmiotti v. Metropolitan Life Ins. Co., 2006 WL 510387 (S.D.N.Y. 2006).  Therefore, Defendants are

entitled to judgment as a matter of law as to Count II.

### IV. <u>Conclusion</u>

Therefore, based on the foregoing analysis, the Court finds that Plaintiff has failed, as a matter of law, to establish in Count I that Defendants' decision to terminate his LTD benefits was arbitrary and capricious.  Moreover, Plaintiff has failed in Counts II and III to show any genuine issue of material fact on the question of whether Defendants failed to substantially comply with the ERISA claims procedure created by 29 C.F.R. § 2560.503-1. Thus, Defendants are entitled to judgment as a matter of law.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1.  Defendants' Motion For Summary Judgment (DE 30) be and the same is hereby **GRANTED**;

2. Plaintiff Kailarsh Marajh's Motion For Summary Judgment (DE 36) be and the same is hereby **DENIED**; and

3. Final Judgment will be entered by separate Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this ___28th___ day of April, 2009.

                                              WILLIAM J. ZLOCH
                                              United States District Judge

Copies furnished:

All Counsel of Record